UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
|---|---|---|---|
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson-Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (DKT. 15)

**I.    Introduction**

Live Nation Entertainment, Inc. ("Live Nation" or "Plaintiff") brought this action against Factory Mutual Insurance Company ("FM" or "Defendant"). Dkt. 1. The Complaint advances two causes of action -- (i) declaratory relief, and (ii) breach of contract -- based on Defendant's alleged refusal to provide insurance coverage for Plaintiff's qualifying losses due to the COVID-19 pandemic. *Id.* ¶¶ 108–20.

On April 2, 2021, Defendant filed a motion for partial judgment on the pleadings. Dkt. 15 (the "Motion"). On the same day, Defendant filed a request for judicial notice. Dkt. 16 ("Defendant's RFN"). On May 14, 2021, Plaintiff filed an opposition. Dkt. 20 (the "Opposition"). On the same day, Plaintiff filed a request for judicial notice. Dkt. 21 ("Plaintiff's RFN"). On May 28, 2021, Defendant filed a reply. Dkt. 21 (the "Reply").

A hearing on the Motion was held on December 6, 2021, and it was taken under submission. For the reasons stated in this Order, the Motion is **DENIED**.

**II.    Factual Background**

    A.    The Parties

It is alleged that Plaintiff is a Delaware corporation whose principal place of business is in Beverly Hills, California. Dkt. 1 ¶ 9.

It is alleged that Defendant is a corporation organized under the laws of Rhode Island, whose principal place of business is in Johnston, Rhode Island. *Id.* ¶ 10. It is alleged that Defendant was authorized to conduct the business of insurance in Los Angeles County during the relevant time period. *Id.*

    B.    The Insurance Policies

It is alleged that Plaintiff purchased Defendant's Global Advantage Policy (the "Policy") with a coverage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

period from at least June 1, 2019 to June 1, 2020. *Id.* ¶ 38. The Complaint incorporates the Policy by reference, *see* Dkt. 1 at 9 n.1, and Defendant submitted excerpts of the Policy in support of the Motion. Dkts. 15-3, 15-4, 15-5.

      1.    <u>Scope of Coverage</u>

The Policy states that it "covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded." Dkt. 15-3 at 9. The Policy then includes the following statements as to the scope of coverage:

- "Time Element" insurance, which covers losses "directly resulting from physical loss or damage of the type insured . . . ." Dkt. 15-3 at 48.

- "Civil or Military Authority" insurance, which covers losses and extra expenses incurred "if an order of civil military authority limits, restricts, or prohibits partial or total access to an insured location provided such order is the direct result of physical damage of the type insured . . . ." Dkt. 15-4 at 3.

- "Ingress/Egress" insurance, which covers losses and extra expenses incurred "due to the necessary interruption of the Insured's business due to partial or total physical prevention of ingress to or egress from an insured location . . . provided that such prevention is a direct result of physical damage of the type insured to property of the type insured." Dkt. 15-4 at 4.

- "Contingent Time Element" insurance, which covers losses and extra expenses "directly resulting from physical loss or damage of the type insured." Dkt. 15-4 at 4.

- "Expediting Costs" insurance, which covers "reasonable and necessary costs . . . for the temporary repair of insured physical damage to insured property" and "temporary replacement of insured equipment suffering insured physical damage." Dkt. 15-3 at 35.

      2.    <u>Communicable Disease Provisions</u>

In a section titled "OTHER ADDITIONAL COVERAGES," the Policy includes "Communicable Disease Response" insurance, covering "reasonable and necessary costs" incurred for "cleanup, removal and disposal" and for "public relations services" related to a communicable disease. This coverage applies when the property has "the actual not suspected presence of communicable disease" and access to the location is "limited, restricted or prohibited" by "an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease." Dkt. 15-3 at 32-33.

In a section titled "ADDITIONAL TIME ELEMENT COVERAGE EXTENSIONS," the Policy includes a provision titled "INTERRUPTION BY COMMUNICABLE DISEASE." Dkt. 15-4 at 10. It provides that if a covered location has the "actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by . . . an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease . . . [or] a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease, this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

In a section titled "DEFINITIONS," "communicable disease" is further defined as one that is "transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges." *Id.* at 24.

In a section titled "LIMITS OF LIABILITY," maximum coverage under each of the Communicable Disease Provisions[1] is limited to $1 million "in the aggregate during any policy year regardless of the number of locations, coverages or occurrences involved." Dkt. 15-3 at 12-13.

      3.      <u>Exclusions</u>

The Policy also includes a section titled "EXCLUSIONS." It includes the following provision:

> This Policy excludes the following unless directly resulting from other physical damages not excluded by this Policy: . . . **contamination** and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.

Dkt. 15-3 at 24 (the "Contamination Exclusion") (emphasis in original).

Under the "DEFINITIONS" section, "Contamination" is further defined as follows:

> Any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

Dkt. 15-4 at 24.

The "EXCLUSIONS" section states that the Policy excludes "interruption of business, except to the extent provided by this Policy," and "loss of market or loss of use." Dkt. 15-3 at 20 (the "Loss of Use Exclusion").

      C.      Alleged Loss Suffered Due to the COVID-19 Pandemic

The Complaint alleges that the outbreak of COVID-19 and government "Closure Orders" forced "all of Live Nation's United States properties" to close. Dkt. 1 ¶ 29. It alleges that, by the end of the third quarter of 2020, Plaintiff had cancelled more than 5000 concerts, "equating to approximately 15 million tickets," and postponed nearly 6000 shows until 2021. *Id.* ¶ 30. The Complaint alleges that Plaintiff suffered lost revenue from ticket sales and other income streams associated with its properties and shows, and incurred significant extra expenses due to ticket refunds and the implementation of COVID-

---

[1] In this Order, the Communicable Disease Response provision and the Interruption by Communicable Disease provision collectively referred to as the "Communicable Disease Provisions."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
|---|---|---|---|
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

19-related precautions and protocols. *Id.* ¶¶ 32-35. The Complaint alleges that the loss of use of its property is "'physical' because Live Nation has been deprived of the use and function of its buildings." *Id.* ¶ 71. The Complaint further alleges that the Closure Orders "were issued, in whole or in part, as a result of physical damage to property," citing the April 1, 2020, closure order issued by Los Angeles Mayor Eric Garcetti, which recognized that COVID-19 "is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." *Id.* ¶ 80; Dkt. 16-9 at 2.

The Complaint also alleges that the physical presence of COVID-19 in Plaintiff's properties caused physical damage. The Complaint alleges that "infectious droplets can remain on various objects and surfaces for a period of hours to numerous days" leading to "physical alteration of the property," and that such droplets can also "linger in the air for a period of minutes to hours." *Id.* ¶¶ 56–57. The Complaint alleges there have been at least 62 confirmed cases of COVID-19 at approximately 35 of its insured locations. *Id.* ¶ 59.

　　D.　　Denial of Coverage

The Complaint alleges that Plaintiff timely notified Defendant of its claim for its covered losses, including a Proof of Loss provided to Defendant in November 2020. *Id.* ¶¶ 96–98. It alleges that Defendant acknowledged receipt of the Proof of Loss in December 2020, and stated that it was investigating Plaintiff's claim. *Id.* ¶ 99. It alleges that in January 2021, Plaintiff submitted additional information in response to a request from Defendant, but, to date, Defendant has failed to acknowledge coverage for the claim. *Id.* ¶¶ 98, 100–101. The Complaint alleges, on information and belief, that Defendant "has institutionally taken the position that it will deny nearly all coverage sought by its policyholders for COVID-19 losses," including Plaintiff's claim. *Id.* ¶ 102.

**III.**　　**Request for Judicial Notice**

　　A.　　Legal Standards

"When considering a motion for judgment on the pleadings, the court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotation marks and citation omitted).

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Consideration of such materials ensures that "allegations that contradict matters properly subject to judicial notice or by exhibit" are not simply "accept[ed] as true" in connection with a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court may take judicial notice of a wide range of records, including public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles, and the contents of websites. *See, e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013) ("We grant Makaeff's requests to take notice of book collaborations between Donald Trump and Trump University, newspaper and magazine articles, and web pages."); *Tollis, Inc. v. City of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice."); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (admission of a bank's certificate of insurance); *Heidelberg, Inc. v. PM*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
|---|---|---|---|
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

*Lithographers, Inc.*, No. 17-CV-02223-AB-AJWx, 2017 WL 7201872 (C.D. Cal. Oct. 19, 2017); *U.S. ex rel. Modglin v. DJO Glob., Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015).

Even if judicial notice is taken of a document, a court must distinguish between undisputed and disputed matters within such a record. *Lee v. City of L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001). For example, "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Id.* at 690 (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3rd Cir. 1999)).

      B.      Plaintiff's Requests for Judicial Notice (Dkt. 20)

In support of the Opposition, Plaintiff filed a Request for Judicial Notice. Dkt. 20 ("Plaintiff's RFN"). The RFN seeks judicial notice of the following:

> Exhibit A: Defendant's submission to and correspondence with the New York Department of Financial Services concerning approval of Defendant's insurance policy, publicly available through the Department's System for Electronic Rates and Forms Filing website.
>
> Exhibit B: May 5, 2021, Order denying Defendant's Motion for Judgment on the Pleadings in *Cinemark Holdings, Inc. et al. v. Factory Mutual Insurance Company*, Case No. 4:21-CV-00011, E.D. Tex.

Exhibit A is a publicly available record published by a state regulatory agency. "It is not uncommon for courts to take judicial notice of factual information found on the world wide web. This is particularly true of information on government agency websites, which have often been treated as proper subjects for judicial notice." *Paralyzed Veterans of Am. v. McPherson*, No. 06-cv-4670-SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008). Defendant has not opposed the request for judicial notice, and the authenticity of the website or the record available on the website is not disputed. Therefore, the request is **GRANTED** as to Exhibit A.

As to Exhibit B, a court may take judicial notice of another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion." *Lee*, 250 F.3d at 689–90 (internal quotation marks omitted). Therefore, the request is **GRANTED IN PART** as to Exhibit B.

      C.      Defendant's Requests for Judicial Notice (Dkt. 16)

In support of the Motion, Defendant filed a Request for Judicial Notice. Dkt. 16 ("Defendant's RFN"). The RFN seeks judicial notice of nine publicly available government orders regarding COVID-19, including executive and public health orders issued by California Governor Gavin Newsom, California State Public Health Officer Sonia Angell, the Los Angeles County Health Department, and Los Angeles Mayor Eric Garcetti. See Dkts. 16-1 through 16-9.

All nine exhibits are published documents available to the public, and each is referenced in the Complaint. *See* Dkt. 1 ¶ 24. Plaintiff has not opposed the request for judicial notice, and the authenticity of each of the documents is not disputed. Therefore, the Defendant's RFN is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

**IV.     Analysis**

    A.     Legal Standards

        1.     Judgment on the Pleadings

Fed. R. Civ. P. 12(c) provides that, "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) parallels one brought under Rule 12(b)(6). Thus, it challenges the legal sufficiency of the pleadings. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999) (citing *Merchants Home Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995)). The alleged facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. *See Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005). "Rule 12(c) is 'functionally identical' to Rule 12(b)(6)[,] and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). Thus, a complaint should be dismissed without leave to amend only if "the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

As with a motion brought pursuant to Rule 12(b)(6), in deciding a motion under Rule 12(c), a court may "consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion . . . into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (quoting *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim*." Id.*; *see also Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995, 1002 (C.D. Cal. 2009) (indicating that these legal standards apply to a motion for judgment on the pleadings).

        2.     Insurance Coverage

Under California law, an insured has the initial burden of establishing "that the occurrence forming the basis of its claim is within the basic scope of insurance coverage . . . . [O]nce an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1213 (1998) (internal citations omitted). Where an insurance policy covers "direct physical loss of or damage to" property, the "direct physical loss requirement is part of the policy's insuring clause and accordingly falls within [the insured's] burden of proof." *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 778 (2010).

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the W. v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992) (citing *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253 (Cal. 1990)). Thus, "[w]ords used in an insurance/annuity contract are to be interpreted in their 'plain and ordinary sense.'" *Connick v. Tchrs.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
|---|---|---|---|
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

*Ins. & Annuity Ass'n of Am.*, 784 F.2d 1018, 1020 (9th Cir. 1986) (quoting *McKee v. State Farm Fire & Casualty Co.*, 145 Cal. App. 3d 772, 776 (1983)). The intent of the contracting parties "is determined solely from the written provisions of the insurance policy." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1133 (N.D. Cal. 2006) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)). "If the policy language is clear and explicit, it governs." *Id.*

A term of an insurance policy is ambiguous when its language "is capable of two or more constructions, both of which are reasonable." *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins.*, 855 P.2d 1263, 1271 (Cal.1993) (emphasis in original and citation omitted). The absence of a definition does not alone create ambiguity. *Id.* at 866 (quoting *Bank of the W.*, 2. Cal. 4th at 1264-65). When policy language is ambiguous, courts "must admit a party's offered extrinsic evidence if it is relevant to prove a contract 'is reasonably susceptible' to the meaning the party alleges." *Aerotek, Inc. v. Johnson Grp. Staffing Co.*, 269 Cal. Rptr. 3d 147 (Cal. Ct. App. 2020) (citing *Pac. Gas & E. Co. v. G.W. Thomas Drayage etc. Co.*, 442 P.2d 641, 643 (Cal. 1968)); *see also Lee v. Fidelity Nat. Ins. Co.*, 188 Cal. App. 4th 583, 598 (2010) ("In determining whether an ambiguity exists, a court should consider not only the face of the contract but also any 'extrinsic evidence that supports a reasonable interpretation.' ") (quoting *Am. Alternative Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1246 (2006)).

An ambiguity is construed against the insurer. *See AIU Ins. Co.*, 799 P.2d at 1265 ("Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage"). Further, exclusions must be "conspicuous, plain, and clear." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1207(Cal. 2003) (citing *Gray v. Zurich Ins. Co.*, 419 P.2d 168 (Cal. 1966)). However, "when the terms of the policy are plain and explicit, the courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." *First Am. Title Ins. v. XWarehouse Lending Corp.*, 177 Cal. App. 4th 106, 115 (2009) (citing *Jarrett v. Allstate Ins. Co.* 209 Cal. App. 2d 804, 810 (1962)).

    B.    Application

        1.    <u>Whether "Physical Loss or Damage" to Property Has Been Alleged</u>

Defendant does not contest that Plaintiff is entitled to coverage under the Communicable Disease Provisions, which Defendant concedes do not require a showing of "physical loss or damage." Dkt. 15-1 at 12. Instead, the terms of the Policy that are at issue through the Motion are those that require that "physical loss or damage to" property has occurred.[2]

The Complaint alleges that there are two bases for the claim that Plaintiff suffered direct physical loss of, or damage to, its property. *First,* Closure Orders caused physical loss or damage because they "prevented access to and restricted the use of Live Nation's insured locations." Dkt. 1 ¶ 68. *Second,* the physical presence of "infectious droplets" of COVID-19 on Plaintiff's property resulted in "physical alteration" rendering the property "unsafe or unusable," *Id.* ¶ 57. Defendant argues that neither the presence of COVID-19 nor the Closure Orders qualifies as a "physical loss of or damage" under the Policy.

---

[2] These provisions include: Time Element, Civil or Military Authority, Ingress/Egress, Contingent Time Element Extended, and Expediting Cost coverage. See Dkt. 1 ¶¶ 73–95.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

Under California law, physical loss or damage is "widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *MRI Healthcare Center of Glendale, Inc.*, 187 Cal. App. 4th at 779 (quoting 10A Couch on Insurance (3d ed. 2010) § 148.46, p. 148-81); *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) ("California courts would construe the phrase 'physical loss of or damage to' as requiring an insured to allege physical alteration of its property.")

District courts in the Ninth Circuit have reached different outcomes as to whether the presence of COVID-19 can cause physical loss or damage to an insured property. Many have concluded that the alleged presence of COVID-19 is not sufficient, because "disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces." *Unmasked Management, Inc. v. Century-National Ins. Co.*, 514 F. Supp. 3d 1217, 1225–26 (S.D. Cal. 2021) (collecting cases) (citing *O'Brien Sales and Mktg, Inc. Transp.*, 512 F. Supp. 3d 1019 (2021)). Others have held that the presence of COVID-19 constitutes a "physical intrusion that compromises the physical integrity of property." *Pez Seafood DTLA*, 514 F. Supp. 3d 1197, 1204–05 (C.D. Cal. 2021) (citing *Rose's 1 LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020)); *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 842 n.7 (N.D. Cal. 2020), *aff'd*, 15 F.4th 885 (9th Cir. 2021) ("Had Mudpie alleged the presence of COVID-19 in its store, the Court's conclusion about an intervening physical force would be different."); *Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, -- F. Supp. 3d --, No. LA CV20-07132 JAK (AFMX), 2021 WL 2658498, at *9 (C.D. Cal. June 25, 2021); *Hair Perfect Int'l, Inc. v. Sentinel Ins. Co., Ltd.*, No. LA CV20-03729 JAK (KSX), 2021 WL 2143459, at *4–5 (C.D. Cal. May 20, 2021); *Studio 417, Inc. v. The Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020)).

The position that the presence of COVID-19 is a physical intrusion that affects the integrity of a property is the more persuasive one, and is adopted here in connection with the Motion. As noted, on a motion for judgment on the pleadings, factual issues cannot be resolved. In connection with the Motion, such issues are presented as to, *inter alia,* the entry of COVID-19 on the relevant properties, and the necessary extent of responsive remedial measures, including cleaning. The Complaint sufficiently alleges that infectious respiratory droplets, which transmit COVID-19, are physical objects that may alter the property on which they land and remain. *See, e.g.*, Dkt. 1 ¶¶ 55–62. Accepting the allegations in the Complaint as true, it cannot be determined as a matter of law that the presence of COVID-19 in Plaintiff's properties could not cause "physical loss or damage" to property.

In contrast, the Complaint does not sufficiently allege that the Closure Orders directly caused "physical loss or damage" to property. The Ninth Circuit recently concluded that such orders do not cause physical loss or damage, and declined "to interpret 'direct physical loss of or damage to' to be synonymous with 'loss of use.' " *Mudpie*, 15 F.4th at 892 (Stay at Home Orders temporarily preventing operation of plaintiff's business did not constitute physical loss or damage). The Closure Orders temporarily restricted Plaintiff's use of its facilities, but they did not physically alter Plaintiff's property or permanently take property from Plaintiff. Accordingly, the Closure Orders do not provide a basis for coverage under the provisions of the Policy at issue in the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

        2.       <u>Whether the Contamination and Loss of Use Exclusions Apply</u>

Defendant argues that, even if Plaintiff has stated a plausible claim for coverage, it is precluded by the Contamination and Loss of Use Exclusions.

        a)       The Contamination Exclusion

The Contamination Exclusion provides:

> This Policy excludes the following unless directly resulting from other physical damages not excluded by this Policy: . . . **contamination** and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.

Dkt. 15-3 at 24 (emphasis in original).

The Policy defines Contamination as follows:

> Any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

Dkt. 15-4 at 24.

Relying on *Salon XL Color & Design Grp., LLC v. W. Bend Mut. Ins. Co.*, 517 F. Supp. 3d 725 (E.D. Mich. 2021), Defendant argues that the Contamination Exclusion precludes coverage under the terms of the Policy at issue, notwithstanding potential coverage for virus-related damage under the Communicable Disease Provisions. *Salon XL Color* held that the virus exclusion in the insurance policy at issue was "clearly written to exclude 'any virus' from the Business Income, Extra Expense, and Civil Authority coverages," notwithstanding that the exclusion did "not preclude the Communicable Disease coverage." *Id.* at 731. Defendant argues that, similarly, the Contamination Exclusion precludes coverage for virus-related damage, except the coverage that may arise under certain, limited circumstances under the Communicable Disease Provisions.

Unlike the virus exclusion at issue in *Salon XL*, the Contamination Exclusion contains an express exception for physical damage covered by other provisions of the Policy: "If contamination . . . directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured." Dkt. 15-3 at 24 (emphasis removed). The words in an insurance contract "are to be interpreted in their 'plain and ordinary sense.'" *Connick*, 784 F.2d at 1020. (quotation omitted). As discussed above, the Complaint sufficiently alleges that COVID-19 caused physical damage that would be covered by the provisions of the Policy pertaining to physical loss and damage. Thus, on its face, the Contamination Exclusion does not exclude physical damage caused by COVID-19.

Defendant argues that interpreting the Contamination Exclusion in a manner that does not exclude

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

virus-related physical damage would make the Communicable Disease provisions redundant and nullify their sub-limits. Plaintiff could claim coverage for the same virus-related loss under the Communicable Disease Provisions and under other provisions in the Policy. In general, every part of a contract must be given meaning. *See Chaly-Garcia v. U.S.*, 508 F.3d 1201, 1204 (9th Cir. 2007). However, this interpretation does not nullify the Communicable Disease Provisions because they are not entirely coextensive with other provisions of the Policy.

The Communicable Disease Provisions provide coverage for non-physical loss caused by COVID-19 that does not appear elsewhere in the Policy. For example, Ingress/Egress coverage would cover losses incurred due to the prevention of entry into Plaintiff's property because the physical presence of COVID-19 had been detected on the property, causing physical damage. *See* Dkt 15-4 at 4 (coverage for losses incurred due to "prevention of ingress to or egress from an insurance location [as] a direct result of physical damage"). However, once the physical presence of COVID-19 was eliminated, *e.g.,* by cleaning and disinfection, the property could still remain closed to prevent reinfection. Any losses incurred because of the continued closure of the property would not be covered by the Ingress/Egress provision because there would be no actual physical damage causing the closure. The losses from the continued closure could only be covered as non-physical, virus-related damage under the Communicable Disease Provisions. Whether Plaintiff's claims qualify for coverage under either type of coverage is a question of fact that cannot be resolved on a motion based on the pleadings.

The language of the Contamination Exclusion may create some coverage redundancy. It also presents issues as to ambiguity. As noted, "[a] policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *MacKinnon*, 73 P.3d at 1213. As also noted, such ambiguities are construed against the insurer. *AIU Ins. Co.*, 799 P.2d at 1264. An insurer "cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *MacKinnon*, 73 P.3d at 1213. Accordingly, for this additional reason, factual issues are presented that preclude judgment on the pleadings as to the applicability of the Contamination Exclusion.

        b)       The Loss of Use Exclusion

The Loss of Use Exclusion provides that the Policy excludes coverage for "loss of market or loss of use." Dkt. 15-3 at 20. Defendant argues that this term precludes coverage of losses that result when property cannot be used. However, physical damage is not precluded by the Loss of Use Exclusion. The Complaint sufficiently alleges that physical damage resulted from the actual presence of COVID-19 at Plaintiff's properties. Therefore, based on these allegations, the Loss of Use Exclusion would not preclude coverage for claims based on such alleged, physical damage.

**V.**     **Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-00862 JAK (KSx) | Date | February 3, 2022 |
| Title | Live Nation Entertainment, Inc. v. Factory Mutual Insurance Company | | |

                                                                                                                                  :

Initials of Preparer      tj