# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sacramento Downtown Arena LLC, et al., | No. 2:21-cv-00441-KJM-DB |
| Plaintiffs, | ORDER |
| v. | |
| Factory Mutual Insurance Company, | |
| Defendant. | |

In this insurance coverage dispute, Factory Mutual Insurance Company moves to dismiss its insureds' claims that it wrongly denied coverage of losses related to the COVID-19 pandemic. **The motion is denied**. As explained in this order, one reasonable interpretation of the policy's scope and exclusions encompasses the plaintiffs' insurance claims.

**I.   BACKGROUND**

The plaintiffs operate and manage the Golden 1 Center, which is the home of the Sacramento Kings, as well as a nearby hotel and outdoor shopping center. *See* Compl. ¶¶ 15–18, 24–27. In early 2020, the rapid spread of SARS-CoV-2 and COVID-19 developed into a global pandemic. *See id.* ¶¶ 40–48. California and Sacramento County urged people to stay home, and every event at the Golden 1 Center was cancelled for the next year: basketball games, a Bon Jovi concert, a talk by the former First Lady of the United States, and a graduation ceremony for Sacramento State University, among many others. *See id.* ¶ 59. The basketball team and arena

1  lost a year's revenue. *See id.* ¶ 7. Occupancy at the hotel dropped to almost zero before it closed
2  completely for ten weeks, and after reopening, occupancy was half of what it once was. *See id.*
3  ¶ 8. Retailers' and restaurants' revenues plummeted as foot traffic disappeared. *See id.* ¶ 9. The
4  plaintiffs also spent money cleaning, replacing air filtration systems, remodeling, and taking other
5  precautions. *See id.* ¶ 77.

6  Before the pandemic, one of the plaintiffs had purchased an insurance policy from Factory
7  Mutual Insurance Company. *See id.* ¶ 28; Policy, Compl. Ex. A, ECF No. 1-1. The Golden 1
8  Center, the hotel, and the shopping center are insured locations under this policy. *See* Compl.
9  ¶ 30; Policy App'x A (Schedule of Locations). The policy is an "all risks" policy, as explained in
10 the preamble on the first page of its declarations:

11          This Policy covers property, as described in this Policy, against ALL
12          RISKS OF PHYSICAL LOSS OR DAMAGE, except as
13          hereinafter excluded, while located as described in this Policy.

14 Policy at 1. It provides several hundred million dollars' annual aggregate coverage against
15 various losses. *See id.* at 3–5.

16          The policy's first section provides coverage for property damage. *See id.* at 7–32. Part of
17 that section describes "other additional coverages." It introduces these categories of "additional
18 coverages" as coverages "for insured physical loss or damage." One category of additional
19 coverages relates to "communicable disease response":

20          If a **location** owned, leased or rented by the Insured has the actual
21          not suspected presence of **communicable disease** and access to such
22          **location** is limited, restricted or prohibited by:

23                  1) an order of an authorized governmental agency regulating
24                  the actual not suspected presence of **communicable disease**;
25                  or

26                  2) a decision of an Officer of the Insured as a result of the
27                  actual not suspected presence of **communicable disease**,

28          this Policy covers the reasonable and necessary costs incurred by the
29          Insured at such **location** with the actual not suspected presence of
30          **communicable disease** for the:

> 1) cleanup, removal and disposal of the actual not suspected presence of **communicable diseases** from insured property; and
>
> 2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of **communicable diseases** on insured property.
>
> This Additional Coverage will apply when access to such **location** is limited, restricted or prohibited in excess of 48 hours.

*Id.* at 20. The boldface terms are defined. A "communicable disease" is a "disease which is transmissible from human to human by direct or indirect contact with an affected individual or the individual's discharges." *Id.* at 62. "Locations" are those specified in the schedule cited above. *See id.* at 64 & App'x A.

After defining property damage, the policy defines another type of coverage: "time element" coverage. *See id.* at 33–53. This portion of the policy allows claims based on lost earnings or profits if the loss resulted "directly . . . from physical loss or damage of the type insured . . . to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES . . . ." *Id.* at 33. This coverage is extended to several categories of loss grouped under the heading "supply chain time element coverage extensions." *Id.* at 45–49 (formatting omitted). The first of these categories is related to losses incurred as a result of civil and military orders:

> This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured **location** provided such order is the direct result of physical damage of the type insured at the insured **location** or within five statute miles/eight kilometers of it.

*Id.* at 45.[1]

/////

---

[1] A statute mile, also known as a land mile, is 5,280 feet. *See* U.S. Dep't Commerce, Nat'l Inst Standards & Technology, "U.S. Survey Foot: Revised Unit Conversion Factors" (Aug. 31, 2020), https://www.nist.gov/pml/us-surveyfoot/revised-unit-conversion-factors.

The policy excludes coverage in two relevant sections. First, "unless otherwise stated," the policy excludes "loss of market or loss of use." *Id.* at 9. Second, the policy makes an exclusion related to "contamination":

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
>
> 1) **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. . . .

*Id.* at 9, 12. "Contamination" and "contaminant" are also both defined. A contaminant is "anything that causes contamination," and contamination is "any condition of property due to the actual or suspected presence of any . . . virus," among other causes. *Id.* at 62 (boldface omitted).

The plaintiffs believed the policy here covered the losses they had sustained as a result of COVID-19 and government shut-down orders, and they gave notice to Factory Mutual. Compl. ¶¶ 12, 66. Factory Mutual denied the claim. *Id.* ¶ 13. The plaintiffs then filed a complaint in this court, asserting claims for breach of contract, *id.* ¶¶ 126–37, declaratory relief, *id.* ¶¶ 120–25, and bad faith denial of coverage, *id.* ¶¶ 138–47. Factory Mutual now moves to dismiss on the basis of three arguments: (1) the plaintiffs' losses are not covered because they were not the result of "physical loss or damage," (2) their losses are excluded under the contamination exclusion, and (3) their losses are excluded under the exclusion for loss of use. *See* Mot., ECF No. 10; Mem., ECF No. 10-1. The plaintiffs opposed, ECF No. 14, and Factory Mutual replied, ECF No. 17. The court heard the motion by videoconference on July 16, 2021. Fredrick Crombie, Howard Slavitt, and Richard Patch appeared for the plaintiffs. Joyce Wang and Lisa Kirk appeared for the defense. Mins, ECF No. 18. After the hearing, the parties stipulated to the court's taking judicial notice of an insurance policy in a case discussed in the parties' briefs and oral arguments. *See*

/////

/////

1  Stip., ECF No. 20.  The parties also have filed many notices of supplemental authority and briefs
2  discussing those authorities.  See ECF Nos. 22, 23, 26–35, 37–44.[2]

3  **II.    LEGAL STANDARDS**

4  A party may move to dismiss for "failure to state a claim upon which relief can be
5  granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a
6  "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.
7  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v.*
8  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).   The court assumes all factual
9  allegations are true and construes "them in the light most favorable to the nonmoving party."
10 *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch.*
11 *of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do
12 not "plausibly give rise to an entitlement to relief," the motion must be granted.  *Ashcroft v. Iqbal*,
13 556 U.S. 662, 679 (2009).

14 California law applies to Factory Mutual's motion.  *See Manzarek v. St. Paul Fire &*
15 *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The ordinary rules of contract
16 interpretation govern the interpretation of insurance policies under California law.  *See Waller v.*
17 *Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  The court must interpret the policy's language
18 "in context, with regard to its intended function."  *Bank of the West v. Superior Court*, 2 Cal. 4th
19 1254, 1264 (1992).  "If contractual language is clear and explicit, it governs."  *Id.*  But if language
20 is capable of two or more reasonable interpretations, the resulting ambiguity is generally resolved
21 in favor of coverage to protect the "objectively reasonable expectations of the insured."  *AIU Ins.*
22 *Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990).  Coverage clauses are thus interpreted broadly
23 "so as to afford the greatest possible protection of the insured, whereas exclusionary clauses are
24 interpreted narrowly against the insurer."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648
25 (2003) (alterations omitted) (quoting *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).

---

[2] This motion at ECF No. 42 is **granted**.

## III. DISCUSSION

The court begins with the breach-of-contract claim. Factory Mutual contends it did not breach the policy's terms because the plaintiffs' losses are not within the basic scope of coverage. It argues plaintiffs' losses were not the result of "physical loss or damage" as required. *See* Mem. at 7–11. It cites several cases in which courts have held that losses attributable to the COVID-19 pandemic and related government orders are not the result of "physical loss or damage." *See id.* (collecting authority); *see also* Def. Not. Suppl. Auth., ECF No. 26 (citing *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021)). The plaintiffs contend that the words "physical loss or damage" might cover their claims even if viruses did not alter any structures or properties. *See* Opp'n at 6–9. Factory Mutual disagrees. *See* Reply at 3–4; Resp. Suppl. Br. at 1, ECF No. 30.

No matter what might be possible to plead and prove about a different policy and viral pandemics in the abstract, the policy at the center of this case can reasonably be interpreted as defining the presence of a "communicable disease" as "physical loss or damage." The policy's first sentence explains that it offers coverage only for risks of "physical loss or damage." Policy at 1. It later lists "Additional Coverages for insured physical loss or damage." *Id.* at 15. And among these additional coverages—by definition, all "for insured physical loss or damage"—the policy lists "the reasonable and necessary costs incurred" in response to government orders regulating the actual presence of a "communicable disease." *Id.* at 20. An insured could reasonably expect, given these terms, that the presence of a communicable disease such as COVID-19 fits under the "physical loss or damage" umbrella for the policy as a whole.

This reasoning extends equally to the plaintiffs' claims based on losses incurred as a result of civil and military orders. *See id.* at 45. That policy provision ties back to the same "physical damage of the type insured." *See id.* An insured could reasonably expect the term "physical damage" to have the same meaning throughout the policy.

Factory Mutual reads the communicable disease provisions differently. It says they do not expressly require "physical loss or damage," so Factory Mutual argues that under the policy, a communicable disease can be present without causing any physical change to the property. *See*

Mem. at 2, 12–13 & n.1; Reply at 4. For that reason, it contends the presence of a communicable disease is not within the basic scope of coverage. *See* Mem. at 12–13; Reply at 4. This reading may be a reasonable alternative to the plaintiffs' interpretation, but that is not the question here. Under California law, if the language in an insurance policy is capable of more than one reasonable interpretation, as in this case, the ambiguity is resolved in favor of coverage. *AIU*, 51 Cal. 3d at 822; *MacKinnon*, 31 Cal. 4th at 648.

Factory Mutual also argues the plaintiffs' interpretation overextends the communicable disease provisions. *See* Reply at 4. To that end, it quotes a decision from a Washington federal district court in a case about a similar policy:

> The Communicable Disease provisions apply when the disease is present, making it distinct from the Insurance Provided provision, which requires physical loss or damage. Thus, the fact that the Communicable Disease Provisions are applicable does not reverse-activate the Insurance Provided provision.

*Nguyen v. Travelers Cas. Ins. Co. of Am.*, 541 F. Supp. 3d 1200, 1227 (W.D. Wash. 2021). Although the policies in this case and *Nguyen* are similar, they differ in one crucial respect. In *Nguyen*, the policy simply listed the communicable disease provision as one of many "additional coverages." *See* Nguyen Policy at 5, 7, Stip. Ex. A, ECF No. 20. It did not describe the communicable disease provisions as one additional coverage "for insured physical loss or damage," as the plaintiffs' policy does in this case. Policy at 15.

The other decisions Factory Mutual cites are not binding, and they address different disputes. *See* Reply at 5–6 (collecting authority). At the moment, this case involves no dispute about whether COVID-19 was actually present on the plaintiffs' property. *See Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. 20-10167, 2021 U.S. Dist. LEXIS 90526, at *9 (D.N.J. May 12, 2021). Nor has anyone questioned whether COVID exposure occurred at a covered location. *See Mohawk Gaming Enters., LLC v. Affiliated FM Ins. Co.*, 534 F. Supp. 3d 216, 223 (N.D.N.Y. 2021). Other decisions Factory Mutual cites do not confront the ambiguity discussed above, wherein the policy appears to define the presence of a communicable disease as "physical loss or damage." *See Rockhurst Univ. v. Factory Mut. Ins. Co.*, 582 F. Supp. 3d 633, 639 (W.D. Mo.

1    2022). As explained above, it is unnecessary to decide whether the presence of a virus might be
2    "physical loss or damage" in the abstract or under a different policy with different terms. *Cf.*
3    *Islands Rests., Ltd. P'ship v. Affiliated FM Ins. Co.*, 532 F. Supp. 3d 948, 951–55 (S.D. Cal.
4    2021); *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1148–51 (N.D.
5    Cal. 2021); *see also Inns-by-the-Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688, 692 (2021)
6    (expressly limiting decision to "the specific insurance policy" in dispute).

7        Factory Mutual next faults the plaintiffs' interpretation for ignoring the different sublimits
8    and liability periods that apply to the various parts of the policy. *See, e.g.*, Reply at 5. It argues
9    that if the presence of a communicable disease counts as "physical loss or damage" for the policy
10   as a whole, then the sublimits and liability periods specific to the communicable disease
11   provisions are meaningless. *See id.* But the communicable disease provisions and other policy
12   provisions insure against different risks. For example, the communicable disease provisions
13   cover "cleanup, removal and disposal" of diseases and "actual costs of fees payable to public
14   relations services" and other related costs. Policy at 20. By contrast, the "time element"
15   coverage provisions cover specifically defined losses and expenses incurred as a result of a civil
16   or military order. *See id.* at 33–34, 45. Thus, differing sublimits and differing time periods will
17   govern these differing coverage provisions even if the policy defines the presence of a
18   communicable disease as "physical loss or damage."

19       In sum, the plaintiffs have offered a reasonable interpretation of the policy that would
20   bring their alleged losses within the basic scope of coverage. Factory Mutual's motion must be
21   denied unless an exclusion applies. It cites two exclusions.

22       First, Factory Mutual cites the contamination exclusion. *See* Mem. at 13–18. The
23   contamination exclusion does not bar coverage for "other physical damage not excluded by this
24   Policy," including viral contamination. Policy at 12, 62. As explained above, it is reasonable to
25   read the policy as defining the presence of a "communicable disease" as non-excluded "physical
26   damage," so this exclusion would be no bar to coverage. *MacKinnon*, 31 Cal. 4th at 648. This
27   interpretation does not nullify the exclusion, as Factory Mutual contends. Losses caused by other
28   contaminants listed in the Policy's definitions, those that are not "communicable diseases," would

remain within the exclusion's scope. Contamination by foreign substances, impurities, pollutants, hazardous materials, poisons, toxins, mold, and mildew all would be excluded under the plaintiffs' interpretation. *See* Policy at 62.

Factory Mutual also advocates an alternative reading of the contamination exclusion. It argues the additional coverage for communicable diseases acts as an exception to the more general exclusion of losses caused by contaminants. *See, e.g.*, Reply at 7–8. By this reading, an insured is limited to the coverage in the communicable disease provisions, and the contamination exclusion bars claims based on other parts of the policy:

> [The policy] covers certain losses due to COVID-19 under the Communicable Disease coverages, provided that the specific requirements of the Communicable Disease coverages are met, and subject to the applicable sublimits. Absent these specific requirements of the Communicable Disease coverages, or in excess of the applicable sublimits, the Contamination Exclusion applies. The Communicable Disease coverages simply provide the insured with a narrow exception to the exclusion, subject to all other Policy terms.

*Id.* at 7. This interpretation may be reasonable, but that is, again, not the question at this time. When both the insured and insurer propose reasonable interpretations, a court must resolve the ambiguity in the insured's favor. *MacKinnon*, 31 Cal. 4th at 648. And because the disputed language is an exclusion, it must be interpreted narrowly. *Id.*

The second exclusion Factory Mutual cites is the loss-of-use exclusion. *See* Mem. at 18–19. But the loss-of-use exclusion does not apply if the policy states otherwise, and here the policy includes terms insuring the losses the plaintiffs claim here: (1) the communicable disease coverage, which can be read as implicitly defining the presence of a communicable disease as insured "physical loss or damage," as explained above; and (2) the time elements coverage, which provides coverage for certain claimed losses caused by certain interruptions, including civil and military orders, *see id.* at 45.

Factory Mutual has not shown the policy's exclusions remove the plaintiffs' claims from the scope of coverage. Its motion to dismiss the contract claim must be denied. What remains, then, are Factory Mutual's arguments about the plaintiffs' claims for declaratory relief and bad

1  faith denial of coverage.  These arguments are derivative of Factory Mutual's arguments about
2  the contract claim.  *See id.* at 19–20.  Its motion to dismiss these claims is denied as well.
3  **IV.    CONCLUSION**
4  The motion for leave to file supplemental authority (ECF No. 42) is **granted**, and the
5  court has considered the supplemental authority provided by the parties.  The motion to dismiss
6  (ECF No. 10) is **denied.**  A status (pretrial scheduling) conference is set for **December 1, 2022 at**
7  **2:30 p.m.**, with a joint status report due **fourteen days prior.**
8  IT IS SO ORDERED.
9  DATED:  October 28, 2022.

CHIEF UNITED STATES DISTRICT JUDGE